**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH MICHAEL CARILLI, | |
| *Plaintiff,* | |
| | |
| v. | No. 3:19-cv-01922 (JAM) |
| | |
| SEMPLE *et al.*, | |
| *Defendants.* | |

**INITIAL REVIEW ORDER DISMISSING COMPLAINT AND DENYING MOTIONS
FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF COUNSEL**

Plaintiff Joseph Michael Carilli is a prisoner in the custody of the Connecticut

Department of Correction ("DOC"). He has filed a civil rights complaint under 42 U.S.C. § 1983

against numerous officials of the DOC and the University of Connecticut Health Center

("UConn"). Carilli alleges that he suffers from severe medical conditions and that the defendants

have been deliberately indifferent to his need for treatment of these conditions. Based on my

initial review pursuant to 28 U.S.C. § 1915A, I will dismiss the complaint with leave to amend,

and I will deny his motions for injunctive relief and for the appointment of counsel.

## BACKGROUND

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint must be "a short

and plain statement of the claim showing that the pleader is entitled to relief." Carilli has filed a

complaint that is neither short nor plain. Instead, he has filed what amounts to a discordant,

running monologue of a complaint that weighs in at a book-length 415 pages, including 134

paragraphs and 351 pages of exhibits, Doc. #1, and that verges on encyclopedic when accounting

for the 872 pages of supplemental filings, Docs. #9, #13, #14. The allegations span Carilli's

confinement at two different Connecticut prisons, for a period of over five years. Doc. #1 at 6;

1

Doc. #14 at 1-10.[1] He lists some 47 named defendants and 22 Doe defendants, which list is split

in two by a sea of 46 pages with what appear to be mostly chronological "log" notes of Carilli's

medical treatment. Doc. #1 at 1-2, 48-56.[2] The labyrinthian structure of Carilli's complaint has

vastly complicated and prolonged the effort to conduct an efficient and effective initial review of

the complaint as required under 28 U.S.C. § 1915A.

Notwithstanding its page length, the complaint opens unassumingly enough with the

standard, fill-in civil rights complaint provided by the Court to *pro se* prisoner litigants, but the

form cuts off at page two. Doc. #1 at 1-2. It then provides a document promisingly entitled "My

Statement of the Case," but the document confusingly begins with a summary of the nine-step

"process" involved in "cooking a meal," each step with its own "subcodes"—an apparent effort

to metaphorically outline the complaint's structure. *Id.* at 3. Finally at page four, Carilli begins to

---

[1] Specifically, the allegations in the complaint encompass Carilli's confinement at Garner Correctional Institution from October 5, 2014, to August 31, 2016, and his most recent confinement at Osborn Correctional Institution from September 1, 2016, to December 2, 2019. According to the State of Connecticut's Judicial Branch website, Carilli pleaded guilty to multiple charges in three criminal cases in the Connecticut Superior Court and was sentenced to multiple terms of imprisonment on July 17, 2014. Therefore, for purposes of this ruling, I assume that Carilli is a sentenced prisoner. *See* Superior Court Case Look-Up, Criminal/Motor Vehicle, Convictions by Docket Number (T19R-CR13-0103264-S, T19R-CR13-0103649-S, and T19R-CR13-0102846-S), http://www.jud.ct.gov/jud2.htm (last visited May 1, 2020); *see also* State of Connecticut Department of Correction, Inmate Information Search (Inmate Number 133683), https://portal.ct.gov/DOC (last visited May 1, 2020) (noting Carilli is serving a maximum sentence, imposed on July 17, 2014, of ten years' imprisonment).

[2] Carilli names the following defendants: Former Commissioner of Correction Scott Semple, Current Commissioner of Correction Cook, Deputy Commissioner Cheryl Cepelak, Deputy Commissioner of Operations and Rehabilitative Services Angel Quiros, Wardens Edward Maldonado, Kimberly Weir, William Faneuff, Gary Wright and Rodriguez, Deputy Wardens Nicole Thibeault and Gerald Hines, Health Services Administrator ("HSA") Richard Furey, Drs. Mahboob Ashraf, Joseph Breton, Cary Freston, Monica Farinella, Joyce Meng, Rafael Pacheco, Johnny Wu, Gerald Valetta, Charan Singh, Peter Robinson, Danilo Gomes, Abner Gershon, Thomas Lawlor, Jason Ryan, Wright, Mitchell and Bortniker, Optometrist James Smyth, APRNs Nigel Rodney, Eileen Law, Mary Ellen Castro and Juanita Scott, RN JoAnn, Americans with Disabilities Act ("ADA") Coordinator Cyr, Health Services Review ("HSR") Coordinators Michelle Cyr and Sharon Beck, Grievance Coordinator Moore, Psychologist Heather Gaw, Social Worker Tara Dean, Colleen Gallagher, Department of Correction Facilitator Jennifer Benjamin, Assistant Attorney General Graham-Days, Captain Perez #1, Captain Perez #2, Counselor Supervisor/ADA Coordinator Long, John Does 10-20 and Jane Does 10-20. Defendants JoAnn, Beck, Ryan, Scott, Long, Perez #1, Perez #2, John Does 10-20 and Jane Does 10-20 are not listed in the caption on the first page of the complaint but are listed in the description of the parties on pages fifty-five and fifty-six of the complaint.

make the anticipated allegations about the factual and legal nature of his injury, but despite the roughly 70 defendants, the allegations abruptly end just two pages in. *Id.* at 4-5.

Just as soon as the "complaint" begins to resemble something like a proper complaint, it foreshadows that it will be anything but. Carilli puts at pages six and seven a "key," like that which typically can be found on a map but whose function here is unclear. *Id.* at 6-7. There are six keys in total—the letters "A" through "F," adorned with winged symbols flanking each side, whether colored-in triangles or squares marked with a mysterious "X." *Ibid.* But it is unclear exactly what these keys denote. For example, the "A" symbol makes allegations against specific defendants, but the "B" symbol discusses abstractly a claim of deliberate indifference to serious medical need. *Id.* at 6. How the keys are used in practice is no less confusing. For instance, Carilli might allege that a particular defendant "is B and all A," *id.* at 24, or after making an allegation he might say "(A) = this statement," *id.* at 13.

Cognizable allegations briefly resurface at page eight. *Id.* at 8. But by page ten, the complaint devolves again into an inventory of health-related requests, grievances, and administrative appeals that Carilli filed as well as medications, treatment, and diagnostic and lab tests that he received during his three-year incarceration at Osborn Correctional Institution. *Id.* at 10-47. The list is not broken down by medical condition nor is it always chronological, and it is riddled with key-symbols. It is not until page fifty-seven that Carilli presents a coherent, sustained set of allegations for at least five pages. *Id.* at 57-63. Even then, the allegations largely restate the elements of the claims, make conclusory assertions, and summarize the exhibits. Some of the (unnumbered) paragraphs are also very faintly, and inexplicably, crossed out or circled. *Id.* at 61. What follows is a crescendo of approximately 1,200 pages of health-related grievances, responses, and other records over the last five years, Doc. #1 at 64-415; Doc. #9;

Doc. #13; Doc. #14 at 11-150, interrupted only by another set of key-symbol-laden allegations in the third supplement to the complaint, Doc. #14 at 1-10.

None of this is to say the complaint is all gobbledygook. A discerning reader can certainly pull coherent allegations out of the complaint, if only with a fine-tooth comb. From what I can gather, Carilli has alleged that he suffers from a variety of serious medical conditions, including but not limited to a "disc bulge [that] abuts [the] exiting L-5 nerve root" of his lumbar spine vertebrae, bone spurs on his heels, a bone spur on his left index finger, a hiatal hernia, a deformity to his right tibia-fibula, "possible" gynecomastia, and pain and swelling in his left knee. Doc. #1 at 4. He also suffers from conditions involving his left ear, his left eye, and his prostate. *Ibid.* Carilli generally asserts that the defendants exhibited deliberate indifference to his serious medical needs by denying or delaying appointments, examinations, and treatment, the distribution of medications, and referrals to specialists and surgery. *Id.* at 4-5. He also says that certain defendants from his two years at Garner Correctional Institution and his three years at Osborn Correctional Institution are responsible for systematic deficiencies in staffing, facilities, and procedures, *id.* at 6, including insensitive procedures for transporting ill prisoners, *id.* at 8. But very little is alleged to connect any particular defendant to any particular act of indifference to Carilli's serious medical needs.

Carilli alleges the defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights and denied him the opportunity to pursue his administrative remedies or failed to comply with prison directives in violation of the Fourteenth Amendment. *Id.* at 4-5. Carilli seeks compensatory and punitive damages from each defendant in their individual and official capacities, as well as declaratory relief. *Id.* at 11.

Since filing his complaint, Carilli has twice moved for preliminary injunctive relief prohibiting what he alleges is a retaliatory transfer to another prison. Docs. #4, #11. He has also twice moved for the appointment of counsel. Docs. #3, #12.

DISCUSSION

### *The complaint*

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Carilli's complaint fails for two reasons. First, it does not comply with the requirement of Rule 8 of the Federal Rules of Civil Procedure that pleadings must contain "a short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that

5

"each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The point of Rule 8 is to relieve the Court and defendants alike of the "unjustified burden" of having "to select the relevant material from a mass of verbiage." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Dismissal of a complaint is generally reserved for those cases in which the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (*per curiam*) (quoting *Salahuddin*, 861 F.2d at 42). This is exactly such a case.

Carilli's roughly 70 pages of allegations are scattered in bits and pieces over noncontiguous pages and two separate filings, and they are accompanied by approximately 1,200 pages of exhibits. The allegations literally require a key to decipher, and the key itself is indecipherable. The complaint is a prime candidate for dismissal under Rule 8. *See, e.g.*, *Mendes Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (affirming *sua sponte* Rule 8 dismissal of "convoluted" 50-page complaint with only "some factual allegations" and hundreds of pages of exhibits); *see also Celli*, 699 F. App'x at 89 (affirming Rule 8 dismissal of "ill structured and largely indecipherable" complaint).

Second, it is readily apparent that the complaint fails to comply with the limits on permissive joinder of claims against multiple defendants under Rule 20 of the Federal Rules of Civil Procedure. Joinder of claims against multiple defendants is permitted by this Rule if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Here, the few coherent parts of the complaint generally make broad-based, conclusory allegations about defendants' responsiveness to Carilli's various medical needs over the course of five years at two different prisons. It is clear that there are no common questions of law or fact that tie all these alleged wrongs against all the defendants together, apart from Carilli's core thematic contention that the system as a whole has failed him. *Compare Harnage*, 916 F.3d at 142-43 (even though "allegations span several years and invoke several defendants," no violation of Rule 20 because "they all arise from the alleged failure of the named defendants to adequately treat Harnage's hemorrhoid condition before his first surgery").

I therefore conclude that the claims are not properly joined in this action and that the complaint does not comply with Rule 20. *See Peace v. Quinn*, 2015 WL 5618868, at *3 (E.D. Wis. 2015) (finding the "buckshot" complaint violated Rule 20 "because it advances unrelated claims against multiple defendants at two separate prisons") (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). In such circumstances, a plaintiff must file separate lawsuits against each defendant or group of defendants who acted in concert with one another or as to whom plaintiff's claims are logically connected to one another. *See Tuttle v. Semple*, 2017 WL 5711397, at *2 (D. Conn. 2017).

If a complaint is dismissed for failure to comply with joinder rules, courts generally grant leave to amend the complaint. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Salahuddin*, 861 F.2d at 42. Accordingly, plaintiff may file an amended complaint or multiple complaints each of which comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. The amended complaint(s) should include only related claims and shall list only the defendants involved in those claims in the case caption. Any amended complaint must take care not to allege facts that are not relevant to plaintiff's claims.

7

### *Motions for injunctive relief*

Carilli has also filed two identical, two-page motions requesting the Court "to issue a[n] injunction." Docs. #4, #11. Specifically, Carilli seeks an order enjoining defendants from transferring him from Osborn Correctional Institution to a different prison. Doc. #4 at 1. He "fears a retaliatory transfer will occur due to filing this lawsuit," which transfer may cost him his $1.50 per hour job as a clerk at a DOC clothing factory—the highest pay available to him and which took some time to attain. *Ibid.*

To receive a preliminary injunction, Carilli must satisfy a four-part test. First, he must show "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (cleaned up). Second, he must show that he is "likely to suffer irreparable injury in the absence of an injunction." *Id.* at 80. Third, "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Ibid.* "Finally, the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Ibid.* All in all, because a preliminary injunction "is an extraordinary and drastic remedy, [it is] one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (cleaned up); *accord Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510-11 (2d Cir. 2005) (Sotomayor, J.).

Carilli has failed to show that he is likely to suffer irreparable injury in the absence of an injunction. Rather, he conclusorily asserts in a single sentence his "fear" that he will be transferred "due to filing this lawsuit," with no factual allegations to substantiate his fear.

Additionally, state prisoners have no constitutionally protected interest in prison employment absent a state law guaranteeing jobs to prisoners or cabining officials' use of discretion in assigning them. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987); *see also Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (*per curiam*). That is not the case in Connecticut. *See Groomes v. Frazir*, 2017 WL 7410991, at *5 (D. Conn. 2017). Nor do prisoners have a justifiable expectation of being confined at a particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Although officials may not transfer prisoners "in retaliation for the exercise of constitutionally protected rights," *Marino v. Schult*, 764 F. App'x 73, 75 (2d Cir. 2019) (quoting *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998)), Carilli has done no more than conclusorily allege his fear of such retaliation.

In addition, because the claims in this case relate to defendants' alleged failure to provide treatment for Carilli's medical conditions, it would be inappropriate for the Court to grant a request for injunctive relief that "deals with a matter lying wholly outside the issues in the suit." *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *accord Al-Bukhari v. Dep't of Correction*, 720 F. App'x 655, 656 (2d Cir. 2018); *see also Ramos v. Univ. of Connecticut Health Ctr.*, 2018 WL 2465356, at *7 (D. Conn. 2018) (denying request for injunctive relief seeking free copies of documents because request was unrelated to medical care claim asserted in amended complaint).

Carilli has not alleged that he will suffer irreparable harm if the relief sought is not granted to him, and the relief requested is not related to the claims asserted in the complaint. Accordingly, I will deny the motions for injunctive relief.

### *Motions to appoint counsel*

Finally, Carilli has filed duplicate motions for the appointment of *pro bono* counsel. Docs. #3, #12. Carilli states that he cannot represent himself because of the "complexity" of the case, his inability to decipher medical terminology at his educational level, and his limited ability to conduct discovery within the confines of a prison. Doc. #3 at 1.

Civil litigants do not have a constitutional right to the appointment of counsel. *See Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68-69 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case.") (citation omitted). Rather, the decision to appoint *pro bono* counsel in a civil case is discretionary. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (noting district judges are afforded "broad discretion" in determining whether to appoint *pro bono* counsel for an indigent litigant in a civil case) (citation omitted); 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel.") (emphasis added). In addition, the Second Circuit has cautioned the district courts against indiscriminately appointing *pro bono* counsel. *See, e.g.*, *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) (*per curiam*).

In considering whether to appoint *pro bono* counsel for an indigent litigant, a district court must "first determine whether the indigent's position seems likely to be of substance." *See Hodge*, 802 F.2d at 61. "[E]ven where the indigent [litigant's] claim is not frivolous, counsel is often unwarranted where the [litigant's] chances of success are extremely slim." *Cooper*, 877 F.2d at 171; *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

Carilli has not shown that there is any merit to his claims that he has been subject to deliberate indifference. Indeed, a claim for deliberate indifference to serious medical needs requires a demanding standard of proof, including more than a showing that defendants were negligent but rather acted with a state of mind akin to criminal recklessness. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*). As discussed above, the complaint is largely incomprehensible, and where it is intelligible, the allegations are primarily sweeping and conclusory in nature. *Cf. Massie v. Metro. Museum of Art*, 2014 WL 2616966, at *1 (S.D.N.Y. 2014). Although I am sympathetic to the difficulties of litigating from a prison and because of one's education level, the fact of these problems does not mean that Carilli's rights have been violated, and the law requires me to look not to the circumstances of the litigant but the merit of the complaint when determining whether to appoint *pro bono* counsel. Accordingly, I will deny Carilli's motions for the appointment of counsel.

## CONCLUSION

For the foregoing reasons, the Court DISMISSES without prejudice the complaint (Doc. #1) for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. The Court DENIES the motions for injunctive relief (Docs. #4, #11) and for the appointment of counsel (Docs. #3, #12). The Court also DENIES as moot the motions for status of pending motions (Docs. #10, #15).

Carilli may file an amended complaint (or more than one complaint) that complies with the Federal Rules of Civil Procedure by **May 29, 2020**. If Carilli does not file an amended complaint (or amended complaints) by that date, the Clerk of Court shall dismiss this case.

If Carilli chooses to file an amended complaint, it must comply with Rules 8, 10, and 20 of the Federal Rules of Civil Procedure, shall use numbered paragraphs to set out a short and

11

plain description of Carilli's claims to relief, and to promote clarity, shall separate each cause of action or claim to relief into a separate count. Any amended complaint should recount facts in chronological order, specify which defendant(s) each cause of action or claim to relief applies to, and be free from irrelevant information, including voluminous exhibits. Any amended complaint shall clearly state in its caption which entities and/or persons are defendants.

It is so ordered.

Dated at New Haven this 1st day of May 2020.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge